**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-CR-150 (TJH)** |
| **v.** | : | |
| | : | |
| **JAMES DOULGAS RAHM, JR.,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTIONS IN LIMINE TO PRECLUDE EVIDENCE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this response to Defendant James Douglas Rahm, Jr.'s Motions in Limine to preclude the government from using certain language (Def. Motion, ECF No. 35) and from introducing the content of a Facebook post Defendant made. (Def. Motion, ECF No. 37.) Defendant asks this Court to preclude the government from using terms such as "terrorists," "terrorist attack," "rioters," "breach," "assault," "insurrection," "carnage," or other similar terms, to describe the events of January 6, 2021, pursuant to Federal Rules of Evidence 401-403. Defendant separately moves this Court to preclude introduction into evidence of a Facebook post Defendant made in the aftermath of January 6, 2021, under Federal Rules of Evidence 401 and 403. Defendant's arguments lack merit, and his requests to exclude terminology and evidence should be denied.

**FACTUAL BACKGROUND**

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S.

Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President

Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

On January 5, 2021, Defendant traveled from the Philadelphia area to Washington, D.C. with his adult son to participate in the "Stop the Steal" rally.  While in Washington, D.C. on January 5, Defendant attended multiple events including pro-Trump rallies.  On January 6, 2021, Defendant and his son could not get into the "Stop the Steal" rally because of the crowd size, so, as he later told the Federal Bureau of Investigation ("FBI"), he went to the Capitol to "peacefully" make his voice heard.  There, Defendant entered the Capitol at approximately 2:42 pm through the East Rotunda Doors after they were violently breached by rioters from inside.  Defendant spent approximately 11 minutes in the Capitol during which time he went through the Rotunda, through Statuary Hall to the Statuary Hall Connector.  At this point, the rioters in the Connector were just outside the House of Representatives Chamber and were attempting to breach the Chamber Door to get to lawmakers who were sheltering inside.  Defendant turned around and proceeded back whence he came and exited out the East Rotunda Doors at approximately 2:53 pm.  Defendant recorded videos of himself in the Capitol and posted photographs and comments on social media. As a result of the actions of Defendant and hundreds of others, on January 6, 2021, Congress was forced to halt its proceedings and evacuate the House and Senate Chambers.  After the building was secured later that day, Congress reconvened and completed counting, certifying, and declaring the Electoral College vote result.

Defendant's actions at the Capitol were reported to the FBI by Individual 1.  On or around January 8, 2021, Individual 1 visited Defendant's Facebook page and saw multiple posts, to

include photographs and videos, of Defendant's time inside the U.S. Capitol on January 6, 2021.

Individual 1 returned to Defendant's Facebook page a day or two later and noticed that most of

the Facebook posts on that Facebook page concerning the January 6, 2021 U.S. Capitol riot had

been deleted.  Individual 1 was able to take a screenshot of one Facebook post in which another

Facebook user asked Defendant, "Doug are you okay? Are you safe?" and Defendant responded

with the comment, "riot Shields and pepper spray never hurt anyone did they.  Home alive.  History

made.  I walked right through Pelosi's office I should have shit on her chair (three laughing

emojis)", as depicted below:



Individual 1 provided the screenshot and a video Defendant filmed inside the Capitol to

the FBI.  The video did not capture Defendant's face but did capture a voice, identified by

Individual 1 as Defendant's, saying, *inter alia,* "We're taking our fucking house back.  Time to

find some brass and kick some freakin' ass" and showed the interior of the U.S. Capitol building

Rotunda.

On or around January 11, 2021, law enforcement officers took screen captures of the Facebook account belonging to Defendant. This Facebook account matched that which Individual 1 knew to belong to Defendant. Further investigation revealed that multiple other individuals also knew this account to belong to Defendant. The Facebook posts captured in these screen captures have all since been deleted.

## PROCEDURAL BACKGROUND

On February 4, 2021, Defendant was charged by complaint for his actions on January 6, 2021. (ECF No. 1.) About three weeks later, the grand jury charged him with several federal offenses based on the same conduct. (ECF No. 6.) Following a Superseding Indictment, Defendant stands charged with obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One); entering and remaining in a restricted building or ground, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); disorderly conduct in a Capitol building, in violation of 40 U.S.C. 5104(e)(2)(D) (Count Four); and parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. 5104(e)(2)(G) (Count Five). (ECF No. 26.)

Defendant now seeks to preclude the government and any government exhibits or witnesses from referring to Defendant and his actions on January 6 as "terrorists," "terrorist attack," "rioters," "breach," "assault," "insurrection," "carnage," or other similar terms, asserting such terms are irrelevant under Rule 401 and inflammatory, resulting in unfair prejudice under Rule 403. (*See* Def. Motion at 3.) Defendant also seeks to exclude pretrial the Facebook post, *supra*, arguing that it is not relevant evidence or in the alternative, its prejudicial effect outweighs

5

its probative value under Rule 403.  (*See* Def. Motion at 2-4.)  Each of the Defendant's arguments

lack merit, and his requests to preclude language and exclude evidence pretrial should be denied.

## **ARGUMENT**

I.      **The Descriptors Defendant Seeks to Preclude Accurately Describe the Events of January 6 and the Federal Rules of Evidence Do Not Preclude Them.**

Evidence is relevant if "it has any tendency to make a fact more or less probable than it

would be without the evidence; and the fact is of consequence in determining the action."  Fed. R.

Evid. 401.  "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986

F.2d 541, 545 (D.C. Cir. 1993), a "liberal" standard, *United States v. Moore*, --- F.3d --- , 2022

WL 715238, at *2 (D.D.C. Mar. 10, 2022)  Additionally, Rule 403 does not require the government

"to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone."  *United

States v. Gartman,* 146 F.3d 1015, 1021 (D.C. Cir. 1998).  Neither Rule 401 nor 403 supports

Defendant's requested relief.

What took place at the Capitol on January 6, 2021 may be properly described as a riot,

breach, assault or insurrection.  Thousands of people forced their way into the Capitol building

during the constitutionally mandated process of certifying the Electoral College votes, threatened

the peaceful transfer of power after the 2020 presidential election, injured more than one hundred

law enforcement officers, and caused more than two million dollars in damage and loss.  This was

not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that

any plausible argument can be made defending what happened in the Capitol on January 6th as the

exercise of First Amendment rights.") (statement of Judge Moss).

Defendant argues that use of the terms he seeks to preclude "would group Mr. Rahm with

the thousands of individuals on the Capitol grounds on January 6, many of whom engaged in

violent and destructive behavior."  (*See* Def. Motion at 3.)  Defendant's conduct on January 6, like

the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan).  While a jury will judge the defendant based on his own actions, the context of the defendant's actions will necessarily be placed before them.  And that context was a riot.  Defendant provides no legal authority in support of his broad claim that witnesses and government prosecutors must only describe these events using certain words.

Defendant's reliance on *United States v. Garcia-Zarate*, 419 F. Supp. 3d 1176 (N.D. Cal. 2020), is inapposite.  The court there permitted witnesses to "narrate and describe events in a video based on their own perceptions," but precluded the use of "superimposed photos, labels, or comments."  *Id.* at 1178-79.  Here, the government does not intend to use "labels" or "comments" to describe events; instead, witnesses will testify based on their experiences and perceptions.

Accordingly, Defendant's motion should be denied.

## II.     The Facebook Post is Admissible.

Defendant's Facebook post "riot Shields and pepper spray never hurt anyone did they. Home alive.  History made.  I walked right through Pelosi's office I should have shit on her chair

(three laughing emojis)" should be admitted into evidence at trial as it is relevant to the defendant's *mens rea* and *actus reus* and does not offend Federal Rule of Evidence 403.

A.    **Defendant's Words are Relevant to his Intent and Knowledge on January 6, 2021.**

"The Federal Rules of Evidence generally favor the inclusion rather than the exclusion of evidence." *United States v. Thomas,* 987 F.3d 697, 706 (11th Cir. 1993).  At trial, to prove a violation of 18 U.S.C. § 1512(c)(2), the government will be required to prove beyond a reasonable doubt that the defendant "obstruct[ed], influence[d], or impede[d]," an official proceeding, or attempted to do so, and that he did so "corruptly."  18 U.S.C. § 1512(c)(2).  To prove a defendant acted "corruptly" for purposes of Section 1512(c)(2), the government must prove the defendant acted (1) with intent to obstruct, impede, or influence; and (2) wrongfully.  *See United States v. Reffitt,* 1:21-cr-32 (DLF), Final Jury Instructions, Dkt. No. 119, 25-26; s*ee also United States v. Friske,* 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose" and "with the specific intent to subvert, impede or obstruct") (quoting *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing") (internal quotation marks omitted); *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007) (upholding instruction defining "[c]orruptly" as acting "with the purpose of wrongfully impeding the due administration of justice");  To prove that an attempted or actual obstruction of a congressional proceeding amounts to felony obstruction in violation of 18 U.S.C. § 1512(c)(2), the government must therefore adduce evidence establishing beyond a reasonable doubt that a defendant acted intentionally and with "consciousness of wrongdoing."  *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005).

To violate Section 1512(c)(2), the government must also satisfy a "nexus" requirement, namely, that the defendant "contemplated a particular, foreseeable proceeding, and that the contemplated proceeding constituted an official proceeding." *United States v. Young*, 916 F.3d 368, 386 (4th Cir. 2019) (internal quotation marks omitted). "'[T]he nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the *mens rea* requirement of "corruptly" obstructing or endeavoring to obstruct'—that is, the first element of proving a § 1512(c)(2) charge." *Id.* at 385 n.12 (quoting *United States v. Erickson*, 561 F.3d 1150, 1159 (10th Cir. 2009)).

As noted above, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[T]here is no such thing as 'highly relevant' evidence or ... 'marginally relevant' evidence. Evidence is either relevant or it is not." *Foster,* 986 F.2d at 545. Intent may be inferred from defendant's own statements. *Kawakita v. United States,* 343 U.S. 717, 742 (1952).

Defendant's acknowledgment that police employed pepper spray and riot shields on January 6 is directly relevant to the issue of Defendant acting with a wrongful or unlawful purpose and that he did so with a consciousness of wrongdoing. Additionally, it's relevant to Defendant's *actus reus* in so far as it tends to show that by proceeding through pepper spray and riot shields, he engaged in conduct that disrupted the Certification. In that respect, it would also be relevant to the disorderly and disruptive conduct in a restricted building count and the disorderly conduct in a Capitol building count.

The statement as a whole is relevant to his corrupt motive to disrupt or attempt to disrupt the orderly operation of government—specifically, the January 6, 2021 vote to certify the election

of President Biden.  The factfinder at trial may properly make the inference that Defendant's statements in his Facebook post evinced an intent to oppose the government, the same intent that was animating Defendant when he sought to obstruct the Certification proceeding on January 6. Defendant's statements make more probable his purposeful, deliberate effort to obstruct, impede, or interfere with an official Congressional proceeding.  That Defendant made these statements after the events of January 6 does not detract from their relevance to the *mens rea* element of 18 U.S.C. § 1512(c)(2).

In the same way, the statement is also probative of Defendant having knowingly and willfully entered and remained in a restricted building and grounds, engaged in disruptive and disorderly conduct with intent to impede and disrupt the orderly conduct of government, and paraded, picketed, or demonstrated in a Capitol building, elements required by the misdemeanor charges in the superseding indictment.

At bottom, the Facebook post is evidence directly relevant to an element of the offenses.

**B.      Rule 403 Does Not Preclude Admission of the Facebook Post.**

Evidence is subject to the balancing test of Federal Rule of Evidence 403, which renders it inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value.  *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990).  Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *United States v. Cassell,* 292 F.3d 788, 796 (D.C. Cir. 2002) (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair."); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value.")

(citations and punctuation omitted) (emphasis in original).  "Rule 403 establishes a high barrier to justify the exclusion of evidence..." *United States v. Lieu,* 963 F.3d 122, 128 (D.C. Cir. 2020).

As discussed above, the Facebook post is directly relevant to the *mens rea* element of 18 U.S.C. § 1512(c)(2) and the charged misdemeanors, as well as the *actus reus*.  Defendant's statements demonstrate that his conduct on January 6, 2021—entering Capitol grounds, breaching the building, making statements about "kicking some freakin' ass" while inside—was purposeful and was motivated by his belief that the 2020 Presidential Election was fraudulent.  Defendant cannot credibly argue that such evidence will be offered purely for the prohibited purpose of creating an inference that Defendant is of bad character.

The highly probative value of the Facebook post is not substantially outweighed by potential prejudice to the defendant.  Rule 403 "does not bar powerful, or even 'prejudicial' evidence."  *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (internal quotation marks omitted).  "The prejudice that the court must assess is the prejudice that "lies in the danger of jury misuse of the evidence."  *See United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995).  To warrant exclusion, prejudice to the defendant must be *unfair*, and the defense must show "compelling or unique" evidence of prejudice, *see id.*, distinct from the probative value of the evidence and distinct from the intrinsic prejudicial potential.

The D.C. Circuit has consistently upheld the use of limiting instructions as a way of minimizing the residual risk of prejudice.  *See, e.g.*, *United States v. Douglas,* 482 F.3d 591, 601 (D.C. Cir. 2007) (emphasizing the significance of the district court's instructions to jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis).  Thus, because the Facebook post is not unduly prejudicial and any prejudice can be

addressed through an appropriate limiting instruction, its admission is appropriate.

## **CONCLUSION**

To accurately present the context of what took place at the Capitol on January 6, 2021, to wit: a riot, a breach, an assault and an insurrection, the government is required to so refer and Defendant's motion to preclude such language should be denied.  Because Defendant's Facebook post is relevant to Defendant's *mens rea* and *actus reus* and is not unfairly prejudicial, the government respectfully requests the Court deny Defendant's motion to exclude such evidence.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Douglas G. Collyer*
Douglas G. Collyer
Assistant United States Attorney (Detailee)
N.D.N.Y. Bar No. 519096
14 Durkee Street, Suite 340
Plattsburgh, New York 12901
518-314-7800
Douglas.Collyer@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this opposition was sent to counsel for the defendant, Leigh Skipper, on June 29, 2022, via CM/ECF and/or by email.

___/s/_____
Douglas G. Collyer